UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STARNET INSURANCE COMPANY, a Delaware corporation, and BERKLEY UNDERWRITING PARTNERS, LLC, a Delaware Limited liability company, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) Case No. 08-CV-2174 |
| v. | )<br>) Honorable Ronald A. Guzman<br>) Magistrate Judge Michael T. Mason |
| THORSON & ASSOCIATES INSURANCE SERVICES, INC., a California corporation, | )<br>)<br>)<br>) |
| Defendant. | ) |

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFFS' FIRST AMENDED COMPLAINT**

For its Answer, Affirmative Defenses, and Counterclaims to Plaintiffs' First Amended Complaint, Defendant, Thorson & Associates Insurance Services, Inc., by and through its attorneys, states as follows:

**ANSWER**

**Jurisdiction and Venue**

**Complaint No. 1**

Plaintiff, StarNet Insurance Company ("StarNet") is a Delaware corporation, with its principal place of business in Greenwich, Connecticut.

**Answer No. 1**

Defendant lacks the requisite knowledge and information sufficient to form a belief as to the truth of all of the averments contained in Paragraph No. 1, and therefore denies same and demands strict proof thereof.

### Complaint No. 2

Plaintiff, Berkley Underwriting Partners, LLC ("Berkley" or "Company") is a Delaware limited liability company with its principal place of business in Naperville, Illinois.

### Answer No. 2

Defendant lacks the requisite knowledge and information sufficient to form a belief as to the truth of all of the averments contained in Paragraph No. 2, and therefore denies same and demands strict proof thereof.

### Complaint No. 3

Defendant, Thorson & Associates Insurance Services, Inc. ("Thorson") is a corporation incorporated in California with its principal place of business in California.

### Answer No. 3

Defendant admits to all of the averments contained in Paragraph No. 3.

### Complaint No. 4

This court has original jurisdiction under 28 U.S.C. § 1332, in that there is complete diversity between the parties and the matter in controversy exceeds $75,000, exclusive of interest and costs.

### Answer No. 4

Defendant admits only that the amount in controversy exceeds $75,000, exclusive of interest and costs. Defendant lacks the requisite knowledge and information sufficient to form a belief as to the truth of the remaining averments contained in Paragraph No. 4, and therefore denies same and demands strict proof thereof.

**Complaint No. 5**

Venue is proper in this Court pursuant to a valid forum selection clause in the contract which is the subject of this action, as set forth in paragraph 6 below.

**Answer No. 5**

Defendant admits that venue is proper in this jurisdiction. Defendant denies all other averments contained in Paragraph No. 5.

**Factual Background**

**Complaint No. 6**

On October 1, 2004, Berkley Underwriting Partners LLC (the "Company"), as Manager for StarNet, entered into a "Program Administrator Agreement" ("PAA") with Thorson, whereby Thorson was appointed as Program Administrator to solicit, underwrite, bind and issue StarNet insurance policies as set forth in the PAA. A true and correct copy of the PAA (including Exhibits A-D thereto) is attached as Exhibit 1 and is incorporated herein by reference.

**Answer No. 6**

Defendant admits only that Berkley Underwriting Partners, LLC and Thorson & Associates Insurance Services, Inc. executed a document titled "Program Administrator Agreement" (the "PAA"), and that the effective date of the PAA was October 1, 2004. Defendant lacks sufficient knowledge or information to form a belief about the truth of the averment regarding Berkley Underwriting Partners LLC being authorized as a Manager of StarNet. Defendant admits that from October 1, 2004, through February 20, 2006, it was authorized to solicit, underwrite, bind, and issue insurance coverage as a Program Administrator for Berkley Underwriting Partners, LLC. Defendant denies all other averments contained in Paragraph No. 6.

**Complaint No. 7**

StarNet is an express third party beneficiary of the PAA.

**Answer No. 7**

Defendant lacks the requisite knowledge and information sufficient to form a belief as to the truth of all of the averments contained in Paragraph No. 7, and therefore denies same and demands strict proof thereof.

**Complaint No. 8**

Section 10.6 of the PAA provides that any dispute arising out of the PAA shall be submitted and litigated in Chicago, Illinois, and that Thorson as Administrator under the PAA submits to the jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division.

**Answer No. 8**

Defendant denies all of the averments contained in Paragraphs No. 8 inasmuch as they do not accurately reflect the language of Section 10.6 of the PAA.

**Complaint No. 9**

Section 8.2 of the PAA provides *inter alia* that Thorson as Administrator agrees to defend, indemnify and hold Berkley harmless from any loss from negligent or willful errors or omissions of Thorson as Administrator under the PAA, which loss includes all costs, expenses and reasonable attorneys fees, and that these provisions shall survive termination of the PAA.

**Answer No. 9**

Defendant denies all of the averments contained in Paragraphs No. 9 inasmuch as they do not accurately reflect the language of Section 8.2 of the PAA.

**Complaint No. 10**

Section I of the PAA entitled APPOINTMENT/AUTHORITY provides that Thorson's authority is limited and governed, *inter alia*, by "Exhibit A Underwriting Authority" attached to the PAA. Sec. "G. Forms" of Exhibit A to the PAA provides in pertinent part:

> Administrator shall **only use the policy forms and endorsements approved by the Company** and filed with the respective Insurance Department(s) .... (emphasis added).

**Answer No. 10**

Defendant admits that Section I of the PAA is titled "APPOINTMENT/AUTHORITY," and that the selected quotations to section G from Exhibit A are accurate. Defendant denies all other averments contained in Paragraph No. 10.

**Complaint No. 11**

Section I of the PAA also provides in relevant part as follows:

1.2 Subject to the limitations contained in this Agreement, Administrator shall perform all acts necessary to the proper solicitation, placement, acceptance, and servicing of the policies including:

a. to solicit, underwrite, quote, bind, rate, code, and store policies; and

b. to collect, receive, and account for premiums on policies; and

c. to number, issue, countersign, and deliver policies executed by authorized officers of Company . . . .

**Answer No. 11**

Defendant admits that the selected quotations from Section 1.2 of the PAA are accurate. Defendant denies all other averments contained in Paragraph No. 11.

**Complaint No. 12**

Section III of the PAA entitled LIMITATION OF AUTHORITY, provides in relevant part:

    3.1    With respect to the policies which Administrator is now or may in the future be authorized to solicit, transact, quote, underwrite, rate, or bind under this Agreement, **Administrator will not solicit, transact, quote, underwrite, rate, or bind policies on . . . b. risks which are not in compliance with the applicable forms, rules, rates, or filings of Company according to their exact terms** and to the laws and regulations in effect in the Territory. (emphasis added).

**Answer No. 12**

Defendant admits that Section III of the PAA is titled "LIMITATIONS OF AUTHORITY," and that the selected quotations from Section 3.1 are accurate. Defendant denies all other averments contained in Paragraph No. 12.

**Complaint No. 13**

The "forms, rules, rates, or filings of the Company" as to StarNet policies under the above PAA Sec. III. 3.1.b. include the **Declarations**, page 2, regarding premium which reads: **"TOTAL PREMIUM (Subject to Audit)."**

**Answer No. 13**

Defendant denies all of the averments contained in Paragraph No. 13.

**Complaint No. 14**

The "forms, rules, rates, or filings of the Company" for the StarNet policies under the above PAA Sec. III. 3.1.b. pertinent here also include the "**Premium Schedule**," which specifically provides for an entry under "**Advance Premium**."

**Answer No. 14**

Defendant denies all of the averments contained in Paragraph No. 14.

**Complaint No. 15**

The "forms, rules, rates, or filings of the Company" for the StarNet policies under the above PAA Sec. III. 3.1.b. pertinent here also include, a

6

"**Premium Audit**" Clause, appearing as Section 5, on page 12 of 16 of the ISA Commercial General Liability Coverage form CG 00 01 10 01 as follows:

    **5.**    **Premium Audit**

        a.    We will compute all premiums for this Coverage Part in accordance with our rules and rates.

        b.    Premium shown in this Coverage Part as **advance premium is a deposit premium only**. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. **The due date for audit and retrospective premiums is the date shown as the due date on the bill**. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

        c.    The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request. (emphasis added).

## Answer No. 15

Defendant denies all of the averments contained in Paragraph No. 15.

## Complaint No. 16

Section V of the PAA entitled PREMIUM REPORTING AND CASH REMITTANCES under Section 5.3 provides that Thorson as Administrator will provide company with an itemized monthly Statement of transactions under the PAA, including premiums written and quoted, and premiums collected.

## Answer No. 16

Defendant admits that Section V of the PAA is titled "PREMIUM REPORTING AND CASH REMITTANCES." Defendant denies all other averments contained in Paragraph No. 16.

7

### Complaint No. 17

Thorson as Administrator was authorized by Berkley to quote a premium to an applicant or insured only based upon the applicant's estimated annual payroll, and only subject to adjustment retroactively to reflect actual payroll, as determined by annual audit of the insured's payroll.

### Answer No. 17

Defendant all of the the averments contained in Paragraph No. 17.

### Complaint No. 18

Section V entitled PREMIUM REPORTING AND CASH REMITTANCES of the PAA, under Section 5.1 provides that Thorson as Administrator "shall be liable for and shall pay to Company (Berkley) all net written premium attributable to the policies produced hereunder, whether or not such premiums have been collected by Administrator."

### Answer No. 18

Defendant admits that Section V is titled "PREMIUM REPORT AND CASH REMITTANCES," and that the selected quotations from Section 5.1 are accurate. Defendant denies all other averments contained in Paragraph No. 18.

### FIRST CLAIM FOR RELIEF

**(Breach of Contract - Audits)**

### Complaint No. 19

Plaintiffs incorporate paragraphs 1-18 as though fully set forth herein.

### Answer No. 19

Defendant incorporates its answers to the averments contained in Paragraphs 1 through 18 as though fully set forth herein.

8

**Complaint No. 20**

Berkley has satisfied all of its obligations to Thorson under the PAA.

**Answer No. 20**

Defendant denies all of the averments contained in Paragraph No. 20.

**Complaint No. 21**

Thorson breached the PAA by failing to comply with the foregoing limitations on its authority to quote premium for policies it issued by representing to certain companies (referred to collectively as "the Unaudited Companies") that the premium Thorson quoted would *not* be subject to retroactive adjustment after audit.

**Answer No. 21**

Defendant denies all of the averments contained in Paragraph No. 21.

**Complaint No. 22**

The Unaudited Companies included Red Carpet USA, LLC. Copies of the Declaration Pages, Premium Schedule and Premium Audit Clause in the StarNet policy Thorson issued to that company are attached as Exhibit 2. A copy of Thorson's letter to Red Carpet USA, LLC stating that the StarNet policy was "nonauditable" is attached as Exhibit 3.

**Answer No. 22**

Defendant lacks knowledge or information sufficient to form a belief about the truth of whether Red Carpet USA, LLC was audited by Plaintiffs or whether Plaintiffs attempted to audit Red Carpet USA, LLC. Defendant denies that it breached the PAA with regard to Red Carpet USA, LLC. Defendant denies all other averments contained in Paragraph No. 22.

**Complaint No. 23**

The Unaudited Companies included Golden Bear Marketing & Transportation, Inc. Copies of the Declaration Pages, Premium Schedule and Premium Audit Clause in the StarNet policy Thorson issued to that company are attached as Exhibit 4. A copy of Thorson's Premium Summary dated December 16, 2005, to Golden Bear Marketing & Transportation stating that the general liability policy "will not be audited" is attached as Exhibit 5.

**Answer No. 23**

Defendant lacks knowledge or information sufficient to form a belief about the truth of whether Golden Bear Marketing & Transportation, Inc. was audited by Plaintiffs or whether Plaintiffs attempted to audit Golden Bear Marketing & Transportation, Inc. Defendant denies that it breached the PAA with regard to Golden Bear Marketing & Transportation, Inc. Defendant denies all other averments contained in Paragraph No. 23.

**Complaint No. 24**

The Unaudited Companies included G&M Oil Company, Inc. Copies of the Declaration Pages, Premium Schedule and Premium Audit Clause in the StarNet policy Thorson issued to that company are attached as Exhibit 6. A copy of Thorson's Premium Summary dated November 30, 2004, to G&M Oil Company, Inc. stating that the "General Liability will not be subject to audit" is attached as Exhibit 7.

**Answer No. 24**

Defendant lacks knowledge or information sufficient to form a belief about the truth of whether G&M Oil Company, Inc. was audited by Plaintiffs or whether Plaintiffs attempted to audit G&M Oil Company, Inc. Defendant denies that it breached the PAA with regard to G&M Oil Company, Inc. Defendant denies all other averments contained in Paragraph No. 24.

**Complaint No. 25**

The Unaudited Companies included Palm Springs Oil Company, Inc. Copies of the Declaration Pages, Premium Schedule and Premium Audit Clause in the StarNet policy Thorson issued to that company are attached as Exhibit 8. A copy of Thorson's Premium Summary dated December 16, 2005, to Palm Springs Oil Company, Inc. stating that the "GL [general liability] will not be subject to audit" is attached as Exhibit 9.

**Answer No. 25**

Defendant lacks knowledge or information sufficient to form a belief about the truth of whether Palm Springs Oil Company, Inc. was audited by Plaintiffs or whether Plaintiffs attempted to audit Palm Springs Oil Company, Inc. Defendant denies that it breached the PAA with regard to Palm Springs Oil Company, Inc. Defendant denies all other averments contained in Paragraph No. 25.

**Complaint No. 26**

The Unaudited Companies included Winall Oil Company. Copies of the Declaration Pages, Premium Schedule and Premium Audit Clause in the StarNet policy Thorson issued to that company are attached as Exhibit 10. A copy of Thorson's letter to Winall Oil Company stating that the StarNet policy was "nonauditable" is attached as Exhibit 11.

**Answer No. 26**

Defendant lacks knowledge or information sufficient to form a belief about the truth of whether Winall Oil Company was audited by Plaintiffs or whether Plaintiffs attempted to audit Winall Oil Company. Defendant denies that it breached the PAA with regard to Winall Oil Company. Defendant denies all other averments contained in Paragraph No. 26.

**Complaint No. 27**

Plaintiffs are informed and believe, and thereon allege, that total premium due and owing from the Unaudited Companies after audit of their payroll would have been more than $75,000 greater than the premiums quoted and collected by Thorson without such audit.

**Answer No. 27**

Defendant lacks the requisite knowledge and information sufficient to form a belief as to the truth of all of the averments contained in Paragraph No. 27, and therefore denies same and demands strict proof thereof.

### Complaint No. 28

As a proximate result of Thorson's breach of the PAA Plaintiffs have been damaged in an amount to be proved at trial, in excess of $75,000.00.

### Answer No. 28

Defendant denies all of the averments contained in Paragraph No. 28.

### SECOND CLAIM FOR RELIEF

### (Breach of Contract – Payment of Premiums)

### Complaint No. 29

Plaintiffs incorporate paragraphs 1-18 as though fully set forth herein.

### Answer No. 29

Defendant incorporates its answers to the averments contained in Paragraphs 1 through 18 as though fully set forth herein.

### Complaint No. 30

Berkley has satisfied all of its obligations to Thorson under the PAA.

### Answer No. 30

Defendant denies all of the averments contained in Paragraph No. 30.

### Complaint No. 31

Thorson breached the PAA by failing to comply with Section 5.1 of the PAA which provides that Thorson as Administrator "shall be liable for and shall pay to Company (Berkley) all net written premium attributable to the policies produced hereunder, whether or not such premiums have been collected by Administrator."

### Answer No. 31

Defendant denies all of the averments contained in Paragraph No. 31.

### Complaint No. 32

Thorson issued StarNet insurance policies pursuant to the PAA to insureds, premiums for which have not been paid to StarNet.

### Answer No. 32

Defendant lacks the requisite knowledge and information sufficient to form a belief as to the truth of all of the averments contained in Paragraph No. 32, and therefore denies same and demands strict proof thereof.

### Complaint No. 33

As a proximate result of Thorson's breach of Section 5.1 of the PAA plaintiffs have been damaged in an amount to be proved at trial, in excess of $600,000.00.

### Answer No. 33

Defendant denies all of the averments contained in Paragraph No. 33.

### THIRD CLAIM FOR RELIEF

### (Express Indemnity)

### Complaint No. 34

Plaintiffs incorporate paragraphs 1-28 as though fully set forth herein.

### Answer No. 34

Defendant incorporates its answers to the averments contained in Paragraphs 1 through 18 as though fully set forth herein.

### Complaint No. 35

On October 1, 2004, Berkley, as Manager for StarNet, entered into a PAA with Thorson, whereby Thorson was appointed as Program Administrator to solicit, underwrite, bind and issue StarNet insurance policies as set forth in the PAA.

**Answer No. 35**

Defendant admits only that Berkley Underwriting Partners, LLC and Thorson & Associates Insurance Services, Inc. executed a document titled "Program Administrator Agreement," and that the effective date of the PAA was October 1, 2004. Defendant lacks sufficient knowledge or information to form a belief about the truth of the averment regarding Berkley Underwriting Partners, LLC being authorized as a Manager of StarNet. Defendant further admits that from October 1, 2004, through February 20, 2006, it was authorized to solicit, underwrite, bind, and issue insurance coverage as a Program Administrator for Berkley Underwriting Partners, LLC. Defendant denies all other averments contained in Paragraph No. 35.

**Complaint No. 36**

StarNet is the express third party beneficiary of the PAA.

**Answer No. 36**

Defendant lacks the requisite knowledge and information sufficient to form a belief as to the truth of all of the averments contained in Paragraph No. 36, and therefore denies same and demands strict proof thereof.

**Complaint No. 37**

Berkley has satisfied all of its obligations to Thorson under the PAA.

**Answer No. 37**

Defendant denies all of the averments contained in Paragraph No. 37.

**Complaint No. 38**

Thorson expressly agreed in the PAA to defend, indemnify and hold Berkley harmless from any loss from negligent or willful errors or omissions of Thorson as Administrator under the PAA.

**Answer No. 38**

14

Defendant denies all of the averments contained in Paragraph No. 38.

### Complaint No. 39

Section 8.2 of the PAA provides:

At all times hereafter, Administrator agrees to defend, indemnify, and hold Company harmless from and against all claims, actions, causes of action, liability, or loss which result from any real or alleged negligent or willful acts, errors, or omissions of Administrator, or the servants, employees, representatives, producers, or brokers of Administrator in the performance or breach of duties under this Agreement, including but not limited to soliciting, quoting, underwriting, and/or binding policies prohibited under Section 3.1. Administrator further agrees that in the event Company is in violation of any state code, statute, regulation, or bulletin due to the negligent or willful acts, errors, or omissions of Administrator, or the servants, employees, representatives or producers of Administrator, then Administrator shall assume the responsibility and liability for such act and shall indemnify and hold Company harmless for such liability and loss. Loss shall include, but not be limited to, all damages, costs, expenses, reasonable attorneys' fees and other legal fees, penalties, fines, direct or consequential damages, assessments, verdicts (including punitive damages to the extent permissible by law), and any other expense or expenditure incurred by Company.

This Section 8.2 shall survive termination of this Agreement.

### Answer No. 39

Defendant admits that the quotation of Section 8.2 of the PAA is textually accurate.

Defendant denies all other averments contained in Paragraph No. 39.

### Complaint No. 40

Thorson breached the PAA by failing to comply with the foregoing limitations on its authority to quote premium for policies it issued by representing to the Unaudited Companies that the premium Thorson quoted would not be subject to retroactive adjustment after audit. The Unaudited Companies included Red Carpet USA, LLC, Golden Bear Marketing & Transportation, Inc., G&M Oil Company, Inc., Palm Springs Oil Company, Inc., and Winall Oil Company.

### Answer No. 40

Defendant denies all of the averments contained in Paragraph No. 40.

### Complaint No. 41

Plaintiffs are informed and believe, and thereon allege, that total premium due and owing from the Unaudited Companies after audit of their payroll would have been more than $75,000 greater than the premiums quoted and collected by Thorson without such audit.

### Answer No. 41

Defendant denies all of the averments contained in Paragraph No. 41.

### Complaint No. 42

By reason of the foregoing, Plaintiffs are expressly entitled to be held harmless and indemnified by Thorson for all loss resulting from Thorson's negligent acts, errors, and omissions in an amount to be proved at trial, in excess of $75,000 and for costs and reasonable attorney fees incurred in this action.

### Answer No. 42

Defendant denies all of the averments contained in Paragraph No. 42.

**AFFIRMATIVE DEFENSES**

Thorson asserts and alleges the following affirmative defenses to Plaintiffs' Amended Complaint ("Complaint"). In so doing, Thorson does not admit any of the allegations in the Complaint and does not concede that Plaintiffs' have properly stated any cause of action therein. Thorson also incorporates by reference all of the allegations contained in its counterclaims as part of its affirmative defenses.

**FIRST AFFIRMATIVE DEFENSE**

(*Waiver*)

1.     Plaintiffs' have waived any provisions of the PAA requiring that Thorson only write policies subject to audits because Plaintiffs learned that Thorson was writing policies that were not subject to audit but continued to accept premiums from all of the policies Thorson wrote, including those not subject to audit. Plaintiffs also unequivocally stated to Thorson that Thorson could write policies which were not subject to audit under the PAA. Further, Plaintiffs were fully aware, privy to, and, in fact, reviewed the fact that the polices Thorson write were not subject to audit, yet continued to accept premiums on said policies and further failed to object to the non-audit status thereof. Therefore, Plaintiffs have waived any requirement that Thorson write only policies which were subject to audit. Plaintiffs have also waived any right to demand payment of the premiums they now claim are owed to them under the PAA. Plaintiffs bypassed Thorson and collected premiums directly from the insureds. In doing so, they waived the requirements that Thorson collect premiums from the insureds and the requirement that Thorson pay the premiums due under the policy to Plaintiffs.

**SECOND AFFIRMATIVE DEFENSE**

(*Estoppel*)

2.      Plaintiffs through their actions and words are estopped from asserting that the PAA does not allow Thorson to write policies which are not subject to audit.  Plaintiffs specifically told Thorson that under the PAA, Thorson had the authority to write policies which were not subject to audit.  In reliance on these statements, Thorson sold policies which were not auditable.  Plaintiffs learned of these non-auditable policies, but stayed silent and continued to accept premiums from policies that were not subject to audit.  In reliance upon Plaintiffs' affirmative statement and silence, Thorson continued to sell policies which were not auditable.  Therefore, Plaintiffs are now estopped from asserting that the PAA prohibits Thorson from selling policies that are not subject to audit.

### THIRD AFFIRMATIVE DEFENSE

(*Plaintiffs' Breach*)

3.      Plaintiffs are in material breach of the PAA because they: (1) failed to pay Thorson commissions it was due pursuant to section 6.1 and  Schedule C of the PAA; (2) upon information and belief, have only sought to audit policies they believe would result in a net increase in premiums, instead of auditing all policies; and (3) engaged in the collection of premiums from insured directly and prevented Thorson from collecting the full premiums due and, upon information and belief, took actions that contributed to failure to collect the premiums allegedly due from insured.  Because Plaintiffs are in material breach of the contract, they cannot enforce the contract against Thorson.

### FOURTH AFFIRMATIVE DEFENSE

(*Prevention of Performance*)

4.      Plaintiffs, without any authority under the contract, collected premiums directly from the insureds and settled with the insureds for less than the amount Plaintiffs now claim was due under the PAA.  Under section 1.2  of the PAA Thorson has the authority to collect all

premiums from the insured. By interfering with Thorson's ability to collect premiums and settling with the insureds, Plaintiffs have prevented Thorson from collecting the full amount which Plaintiffs now claim due.

## FIFTH AFFIRMATIVE DEFENSE

(*Fraud*)

5. Plaintiffs induced Thorson to enter into the contract through fraudulent statements, and therefore are barred from enforcing the contract in order to claim damages in the above matter. Specifically, to induce Thorson become an agent of Plaintiffs, on or around February 2004, John Diem told David Thorson, the President of Thorson, that Plaintiffs either had filed rates in all states in which Thorson would do business, or that Plaintiffs would complete the filing of rates in all states in which Thorson would do business by the date in which Thorson would start writing policies for StarNet and Berkeley under the PAA. In reliance on this statement, Thorson entered into the PAA and became an agent of Plaintiffs. In fact, Plaintiffs had not filed rates in all relevant states at the time that John Diem made this statement, and further failed to, as represented and relied upon by Thorson, file rates in all relevant states by the time Thorson was to write polices under the PAA. Additionally, to induce Thorson to become an agent of Plaintiffs, on or around February 2004, John Diem told David Thorson that Thorson would have the authority to write policies that were not subject to audit if Thorson became an agent of Plaintiffs. Thorson reasonably relied on, and was damaged by, all of Plaintiffs' fraudulent statements.

## SIXTH AFFIRMATIVE DEFENSE

(*Failure to Mitigate Damages*)

6. Plaintiffs have failed to take reasonable, necessary, appropriate and feasible actions to mitigate their alleged damages and are, therefore, barred from recovering any of their

alleged damages to the extent attributable to their failure to mitigate. At the time that Plaintiffs allegedly breached the PAA, Plaintiffs sought to collect insurance premiums directly from insured, instead of allow Thorson to do so. As a result, Plaintiffs were unable to collect the full amount allegedly due and increased its damages.

### SEVENTH AFFIRMATIVE DEFENSE

(*Ambiguity*)

7. Section 8.2 of the PAA, which Plaintiffs rely on for their third cause of action for express indemnity, is an ambiguous provision. At the time the parties entered into the contract, they intended the provision to apply to indemnification of claims brought by third parties only, not to first party claims involving the parties to the contract. In addition, even assuming the parties did intend for Section 8.2 to cover first-party claims, they did not intend for attorneys' fees to be awarded for first-party claims for breach of the PAA. Thus, Plaintiffs cannot rely on Section 8.2 to support the third cause of action for express indemnity or to support the request for attorneys' fees.

### JURY DEMAND

Defendant hereby demands trial by jury.

Respectfully submitted,

\_\_\_\_/s/ Todd M. Murphy_____
TODD M. MURPHY

DOMINICK W. SAVAIANO
TODD M. MURPHY
CLAUSEN MILLER P.C.
10 S. LaSalle St.
Chicago, Illinois 60603
312-855-1010
Attorneys for Defendant Thorson & Associates Insurance Services, Inc.